08 CIV 7280

Michael J. Frevola
Christopher R. Nolan
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
FHH FONDS NR. 29 MS "TAMPA BAY" – MS "TURTLE BAY" GMBH & CO.
CONTAINERSCHIFF KG

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FHH FONDS NR. 29 MS "TAMPA BAY" –
MS "TURTLE BAY" GMBH & CO.
CONTAINERSCHIFF KG,

        Plaintiff,

-against-

SHANDONG YANTAI INTERNATIONAL
MARINE SHIPPING CO. a/k/a SHANDONG
PROVINCE YANTAI INTERNATIONAL
MARINE SHIPPING CO. a/k/a SYMS,
        Defendant.

08 Civ. _____

**VERIFIED COMPLAINT**

---

Plaintiff, FHH Fonds Nr. 29 MS "Tampa Bay" – MS "Turtle Bay" GmbH & Co. Containerschiff KG ("Plaintiff" or "FHH"), by and through its attorneys, Holland & Knight LLP, for its verified complaint against Shandong Yantai International Marine Shipping Co. a/k/a Shandong Province Yantai International Marine Shipping Co. a/k/a SYMS ("Defendant" or "Shandong"), alleges as follows:

1.  This is a case of admiralty and maritime jurisdiction under 28 U.S.C. § 1333 as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.  At all times material herein, plaintiff FHH was and is a business entity organized and existing under the laws of Germany and maintains its principal place of business care of NSC Schifffahrtsgesellschaft Gmbh & Cie. KG, Van-der-Smissen Str. 9, 22767, Hamburg Germany.

3.  Upon information and belief, at all times material herein, Shandong is a business entity organized and existing under the laws of the People's Republic of China having a place of business located at No.2, Huanhai Road, Zhifu District, People's Republic of China.

4.  On June 1, 2005, FHH and Shandong entered into a time charter whereby FHH chartered the vessel TAMPA BAY (the "Vessel") to Shandong on the New York Produce Exchange 1946 form, as amended between the parties (the "Charter"). A true and correct copy of the Charter is annexed hereto as Exhibit 1.

5.  Under the terms of the Charter, the parties agreed to a daily hire rate of US$14,950 per day, to be paid in advance every fifteen days.

6.  Shandong has breached its obligation to pay its hire payments to FHH. Shandong has not paid hire since June 30. Four hire payments currently are due which total the aggregate amount of US$912,776.67 presently owed to FHH.

7.  Hire Statements 25-27 set forth the hire payments currently due under the Charter. Hire Statement 25 sets forth the hire due from June 30, 2006 through July 31, 2008 for 31 days in the amount of US$463,450.00 plus US$826.67 of expenses for lashings on Shandong's

2

account, totaling an amount of US$464,276.67.[1] Hire Statement 26 sets forth the hire due from July 31, 2008 through August 15, 2008 for 15 days in the amount of US$224,250.00. Hire Statement 27 sets forth the hire due from August 15, 2008 through August 30, 2008 for 15 days in the amount of US$224,250.00. True and correct copies of Hire Statements 25-27 are annexed hereto as Exhibit 2.

8. Despite repeated demands to make good on these debts, Shandong has not paid FHH and continues to fall further behind.

9. As a result of the foregoing and Shandong's breach of its obligations under the Charter, FHH has suffered damages in the principal amount of US$912,776.67. Upon information and belief, it will take three years for FHH to prosecute this claim against Shandong to its completion. The Charter is governed by English law and contains a Hong Kong arbitration clause. Under English law and Hong Kong arbitration rules, FHH is entitled to receive its interest (at the rate of approximately 9%), expenses and reasonable attorneys' fees for prosecuting its claims to completion, which amount is estimated to be US$396,449.70 as set forth below:

| | |
|---|---|
| Principal Amount: | $ 912,776.67 |
| Interest: | $ 246,449.70 (US$912,776.67 x 0.09/year x 3 yrs.) |
| Attorneys' Fees/Expenses: | $ 150,000.00 |
| **Total:** | **$1,309,226.30** |

10. Therefore, as a result of the foregoing and Shandong's breach of its obligations under the Charter, FHH has suffered damages in the amount of US$1,309,226.30 including estimated interest, attorneys' fees and expenses.

---

[1] Please note that Hire Statement 25 incorrectly states that its total is US$463,450.00. The correct total is US$464,276.67, which includes US$826.67 for lashing expenses.

3

11. Shandong is not found within the Southern District of New York but does have goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to it, is claimed by it, is being held for it or on its behalf, or which is being transferred for its benefit, within the jurisdiction and held in the name(s) of Shandong Yantai International Marine Shipping Co. and/or Shandong Province Yantai International Marine Shipping Co. and/or SYMS with, upon information and belief, the following financial institutions: Bank of America, N.A.; Bank of China; The Bank of New York; Citibank, N.A.; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; UBS AG; Wachovia Bank, N.A.; Société Générale; Standard Chartered Bank; BNP Paribas; Calyon Investment Bank; American Express Bank; Commerzbank; ABN Amro Bank; Bank Leumi USA; Banco Popular; Bank of Tokyo-Mitsubishi UFJ Ltd.; or any other financial institution within the Southern District of New York.

12. While all disputes arising out of the Charter are to be arbitrated in Hong Kong, the action herein is submitted in accordance with Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, as well as 9 U.S.C. §8, and is not and cannot be considered a waiver of the parties' agreement to arbitrate.

**WHEREFORE**, FHH Fonds Nr. 29 MS "Tampa Bay" – MS "Turtle Bay" GmbH & Co. Containerschiff KG demands judgment as follows:

1. That a summons with process of attachment and garnishment may issue against the defendant, Shandong Yantai International Marine Shipping Co., a/k/a Shandong Province

4

Yantai International Marine Shipping Co. a/k/a SYMS; and if defendant cannot be found, then that its goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to it, is claimed by it, is being held for it or on its behalf, or which is being transferred for its benefit, within the district may be attached in an amount sufficient to answer plaintiff's claim;

2.   That Shandong Yantai International Marine Shipping Co., a/k/a Shandong Province Yantai International Marine Shipping Co. a/k/a SYMS, and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3.   That judgment be entered in favor of FHH Fonds Nr. 29 MS "Tampa Bay" – MS "Turtle Bay" GmbH & Co. Containerschiff KG and against Shandong Yantai International Marine Shipping Co., a/k/a Shandong Province Yantai International Marine Shipping Co. a/k/a SYMS, in the amount of US$1,309,226.30 (including estimated interest, expenses and attorneys' fees); and,

4. That this Court grant FHH Fonds Nr. 29 MS "Tampa Bay" – MS "Turtle Bay" GmbH & Co. Containerschiff KG such other and further relief which it may deem just and proper.

Dated: New York, New York
      August 15, 2008

    HOLLAND & KNIGHT LLP

By: _____
Michael J. Frevola
Christopher R. Nolan
Lissa D. Schaupp
195 Broadway
New York, NY 10007-3189
Tel:  (212) 513-3200
Fax:  (212) 385-9010

*Attorneys for Plaintiff*
*FHH Fonds Nr. 29 MS "Tampa Bay" – MS "Turtle Bay"*
*GmbH & Co. Containerschiff KG*

# VERIFICATION

STATE OF NEW YORK    )
                                  :ss.:
COUNTY OF NEW YORK  )

MICHAEL J. FREVOLA, being duly sworn, deposes and says:

I am a member of the firm of Holland & Knight LLP, counsel for FHH Fonds Nr. 29 MS "Tampa Bay" – MS "Turtle Bay" GmbH & Co. Containerschiff KG ("FHH"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by FHH and corresponded with FHH's representatives regarding this matter. I am authorized by FHH to make this verification, and the reason for my making it as opposed to an officer or director of FHH is that there are none within the jurisdiction of this Honorable Court.

_____
Michael J. Frevola

Sworn to before me this
15th day of August, 2008

_____
Notary Public

# 5545596_v1

DIALYZ E. MORALES
Notary Public, State of New York
NO. 01MO6059215
Qualified in New York County
Commission Expires June 25, 20__11

# EXHIBIT 1

HANSE Bereederung GmbH & Co. OHG
Anckelmannsplatz 1 · 20537 Hamburg
Telefon: 040/3613040 · Telefax 040/361304250

SECOND ORIGINAL

# Time Charter
## Government Form
*Approved by the New York Produce Exchange*
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1   THIS CHARTER PARTY, made and concluded in ........BJG, 1st........... day of .........June........19........ 2005 ...........
2   Between Messrs. *FHH Fonds Nr. 29 MS "Tampa Bay" - MS "Turtle Bay" GmbH & Co. Containerschiff KG, Hamburg, Germany as Owners c/o Owners' managers Messrs. NSC Schifffahrtsgesellschaft mbH & Cie. KG, Van-der-Smissen Str.3, 22767 Hamburg, Germany*
3   Owners of the good ...................(Steamship)/(Motorship) ....... *"Tampa Bay" - descriptions See Clause 83 -*........ of ...............
4   of ........................tons gross register, and........................tons net register, having engines of........................indicated horse power
5   and with hull, machinery and equipment in a thoroughly efficient state, and classed.......................................
6   at............of about............cubic feet bale capacity, and about........................................tons of 2240 lbs.
7   deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one-half percent of ship's deadweight capacity;
8   allowing a minimum of fifty tons) on a draft of..........feet..........inches on.................summer freeboard, inclusive of permanent bunkers;
9   which are of the capacity of about ........................ tons of fuel, and capable of steaming, fully laden, under good weather
10  conditions about..................knots on a consumption of about....................tons of best Welsh coal-best grade fuel oil-best grade Diesel oil,
11  now *under construction at Qingshan Shipyard, PR China ( scheduled building status: keel laying time: 08.05.2005 / launching time: 30.09.2005 / delivery time: 30.06.2006   )*
12  and. Messrs. *S.Y.M.S.(Shandong Yantai International Marine Shipping Co.)*....Charterers of the City of *Yan tai, Shandong province, PR China*.
13  WITNESSETH, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
14  about........ *60 months +/- 60 days in Charterers' option*........................................................................
15  ..........................................................................................................within below mentioned trading limits.
16  Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter *subject to Owners approval and giving reason if disagree within 48 hours when Owners receive notice of sublet from Charterers*, but Charterers remaining responsible for
17  the fulfilment of this Charter Party. *Acceptance of delivery by Charterers shall not constitute any waiver of Owners' obligation hereunder.*
18  Vessel to be placed at the disposal of the Charterers, at *on arrival at first sea pilot station at one(1) safe port of China at any time day or night Sundays and Holidays included, port in Charterers' option*.
19  *Owners shall give Charterers notice of vessel's delivery date in accordance with Clause 36*........................
20  in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No.6), as
21  the Charterers may direct. If such dock, wharf,or place be not available time to count as provided for in clause No.5. Vessel on her delivery *shall to* be
22  ready to receive cargo *in I.S.O. containers and/or flat racks with dry and* with clean-swept holds and tight, staunch, strong and in every way fitted for
    the *container liner* service, having water ballast, winches and
23  donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same
24  time (and with full complement of officers, *and crew*, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful,
    *harmless* merchan-
25  dise, including petroleum or its products, in proper containers; excluding *see Clause 54*..................................
26  (vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk;
27  all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports in British North
28  America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or
29  Mexico, and/or South America........................................................................................and/or Europe
30  and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between
31  October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season, White Sea, Black Sea and the Baltic,
32  *trading worldwide always safely afloat, always within Institute Warranty Limits, always via safe anchorage(s), safe port(s), safe berth(s) with lawful ISO*
33  *containers only*.......................................................................................................
34  *See Clause 86*..............................................................................................................
35  as the Charterers or their Agents shall direct, on the following conditions:
36      1.That the Owners shall provide and pay for all provisions, wages and *immigration* consular shipping and discharging fees of the Crew; shall pay
    for the
37  insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep
38  the vessel in a thoroughly efficient state in hull, machinery and equipment *with all certificates for the vessel and officers/crew necessary to comply with current regulations at port(s) of call and canals* for and during the service.
39      2. That the Charterers *while the vessel is on hire* shall provide and pay for all the fuel except as otherwise agreed, Port Charges, Pilotages,
    *compulsory garbage fees unless vessel has actually disposed of garbage in which case for Owners' account*, towages, Agencies, Commissions,
40  Consular Charges (except those pertaining to *individual* the Crew members *but not for usual clearance charge which is considered as part of port charges, or flag of the vessel*), and all other usual expenses except those before stated *in Clause 1*, but when the vessel puts into
41  a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
42  illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this
43  charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period
44  of six months or more.
45      Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but
46  owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards
47  for dunnage, they making good any damage thereto.
48      3. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on
49  board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than........................tons and not more than
50  ................tons and to be re-delivered with not less than....................tons and not more than..........................tons: *See Clause 37*
51      4.That the Charterers shall pay for the use and hire of the said Vessel at the rate of *USD 14,950.00 per day or pro rata including overtime*
52  *payable every 15 days in advance*....................United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and
53  stores on,.............summer freeboard, per Calendar Month, commencing on and from the *time of the* day of her delivery, as aforesaid, and at

HANSE Bereederung GmbH & Co. OHG

**SECOND ORIGINAL**

54  and after the same rate for any part of a *day* month; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary
55  wear and tear excepted, to the Owners (unless, *the vessel* lost) at *on dropping last outward sea pilot at one(1) safe port within South Japan/Singapore range or west Med range, i.e. not east of Cape Passero or Antwerp/ Hamburg range including east Coast UK , port in Charterers' option at any time*
56  *day or night Sundays and Holidays included,* unless otherwise mutually agreed. Charterers are to give Owners not less than *30/15/10/7/5 days approximate and 3/2/1 days definite*
57  notice of vessel's expected date of re-delivery, and probable port. *Delivery and redelivery date/time to be based on Beijing time.*
58  5. Payment of said hire to be made in New York in cash in United States Currency, semi-monthly *every 15 days* in advance *against Charterers' receipt of Owners' correct original invoices,* and for the last half month or
59  part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes
60  due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the
61  hire, or bank guarantee, or on any breach of this Charter Party, *subject to Clause 41,* the Owners shall be at liberty to withdraw *any part of the service or* the vessel from the service of the Char-
62  terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. Time to count from *the date and hour of valid delivery of the Vessel to Charterers* 7 a.m. on the working day
63  following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they
64  to have the privilege of using vessel at once, such time used to count as hire.
65  Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, *up to a maximum US$1000. In case higher amount(s) are involved, Charterers to firstly consult Owners* by the Charterers or their Agents, subject
66  to 2½ % commission and such advances shall be deducted from the hire *against presentation of vouchers stamped/signed by Master and/or officers.* The Charterers, however, shall in no way be responsible for the application
67  of such advances *(See also Clause 55).*
68  6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place *or anchorage* that Charterers or their Agents may
69  direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely
70  lie aground
71  7. That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also
72  accommodations for Supercargo, if carried, shall be at the Charterer's disposal, reserving only proper and sufficient space for Ship's officers, crew,
73  tackle, apparel, furniture, provisions, stores and fuel. Charterers have the privilege of passengers as far as accommodations allow, Charterers
74  paying Owners.........per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are
75  incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.
76  8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and
77  boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and
78  agency; and Charterers are to *perform all cargo handling* load, stow, and trim the cargo at their expense under the supervision of the Captain, who is to sign *the* Bills of Lading for
79  cargo as presented, in conformity with Mate's or Tally Clerk's receipts. *However in Charterers' option, the Charterers or their agents may sign Bills of Lading on behalf of the Captain always in conformity with Mate's or tally/clerk's receipts. All Bills of Lading shall be without prejudice to this Charter and the Charterers shall indemnify the Owners against all consequences or liabilities which may arise from any inconsistency between this Charter and any Bills of Lading or waybills signed by the Charterers or their agents or by the Captain at their request.*
80  9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on
81  receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.
82  10. That the Charterers *are entitled* shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted
83  with the utmost despatch*(See also Clause 79.-Supercargo).* He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the
84  rate of *US$15* $1.00 per day *for victualling at Captain's table.* Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally
85  Clerks, Stevedore's Foreman, etc., Charterers paying at the *for all such victualling, representation and communications at actual costs against representation detailed vouchers* current rate per meal, for all such victualling. *Rate per meal USD 6.50. Charterers to provide Master in writing with their instructions as to any required entertainment/communication/victualling.*
86  11. That the charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, *or by Cable/Telex/Fax* and the
87  Captain shall keep a full and correct *deck and engine* Log of the voyage or voyages *in English language,* which are to be patent *and accessible* to the Charterers or their Agents, and furnish the Char-
88  terers, their Agents or Supercargo, when required, with a true *clear and legible* copy of such deck and engine daily Logs *in English language,* showing the course of the vessel, *weather conditions, Beaufort scale and sea state, speed, revolutions of main engine per minute,* and distance run and the con-
89  sumption of fuel *for main engine, generous and/or auxiliary engines.*
90  12. That the Captain shall use diligence in caring for the ventilation of the cargo.
91  13. That the Charterers shall have the option of continuing this charter for a further period of.............................................
92  ...............................................................................................................................................................................
93  on giving written notice thereof to the Owners or their Agents........days previous to the expiration of the first-named term, or any declared option.
94  14. That if required by Charterers, time not to commence before *the agreed opening layday (See Clause 36)*............and should vessel
95  not have given written notice of readiness be delivered on or before *the agreed cancelling date stipulated in Clause 36, the Owners immediately after having got knowledge of it to inform Charterers in writing about the reasons and the right and true situation of the vessel, giving Charterers proof of same, respectively enabling Charterers to check such situation themselves, in the same message Owners to apply for a reasonable extension of the agreed cancelling date in line with the prevailing circumstances, and Charterers to declare within 2 working days whether they agree to extend the cancelling date accordingly, or whether they elect to cancel the contract.* but not later than 4 p.m. Charterers or
96  their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.
97  15. That in the event of the loss of time from deficiency *and/or default of* and/or strike or stoppage *by officers or crew or deficiency* of men or stores, fire, breakdown *of* or damages to hull, machinery or equipment,

HANSE Bereederung GmbH & Co. OHG

SECOND ORIGINAL

98  grounding, detention by average accidents to ship or cargo, *unless resulting from inherent vice, quality or defect of the cargo*, drydocking for the purpose of examination or painting bottom, or by any other cause *unless caused by Charterers or Charterers' agents/servants or any reasons for which Charterers are responsible.*
99  preventing the full working of the vessel, the payment of hire *and overtime if any*, shall cease for the time thereby lost; *All fuels used by the vessel while off-hire shall be for Owners' account* and if upon the voyage the speed be reduced by
100 defect in or breakdown of any part of her hull, machinery or equipment, the time *actually* so lost, and the cost of any extra fuel consumed in consequence
101 thereof, and all extra *proven direct resulting* expenses shall be deducted from the hire.
102 16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be
103 returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,
104 Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.
105 The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the
106 purpose of saving life and property.
107 17. ~~That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York;~~
108 ~~one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for~~
109 ~~the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.~~ *(See Clause 51)*
110 18. That the Owners shall have a lien upon all cargoes, and all sub-freights, *sub-hires* for any amounts due under this Charter, including General Aver-
111 age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess
112 deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which
113 might have priority over the title and interest of the owners in the vessel. *(See Clause 104 - BIMCO Non-Lien Provision Clause)*
114 19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and
115 Crew's proportion. General Average shall be adjusted, stated and settled, according to ~~Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of~~
116 York-Antwerp Rules *1974* ~~1924~~,*as amended 1990 in Hong Kong and English law to apply*, - *hire not to contribute to General Average* ~~at such port or place in the United States as may be selected by the carrier, and as to matters not provided for by these~~
117 ~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into~~
118 ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at~~
119 ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~
120 ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier~~
121 ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~
122 ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~
123 ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~
124 ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~
125 ~~United States money.~~ *Charterers shall procure that all Bills of Lading issued during the currency of the Charter will contain a provision to the effect that general averages shall be adjusted according to York-Antwerp Rules 1974 including latest subsequent amendments and will include the "New Jason Clause" - as attached to this Charter Party.*
126 ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~
127 ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~
128 ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~
129 ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~
130 ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~
131 ~~ships belonged to strangers.~~
132 ~~Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.~~
133 20. ~~Fuel used by the vessel while off hire, also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and the~~
134 ~~cost of replacing same, to be allowed by Owners.~~
135 21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~
136 ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~
137 ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~
138 *See Clause 99..................*
139 .........................
140 22. ~~Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks) capable of handling lifts up to three tons, also~~
141 ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~
142 ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel lanterns and oil for~~
143 ~~night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterer's expense. The~~
144 ~~Charterers to have the use of any gear on board the vessel.~~ *If required the vessel shall work night and day.*
145 23. ~~Vessel to work night and day, if required by Charterers, and all winches to be at Charterers' disposal during loading and discharging;~~
146 ~~steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen,~~
147 ~~deck-hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the~~
148 ~~port, or labor unions, prevent crew from driving winches, shore Winchmen to be paid by Charterers. In the event of a disabled winch or winches, or~~
149 ~~insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned~~
150 ~~thereby.~~
151 24. ~~It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained~~
152 ~~in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels,~~
153 ~~etc.", in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both~~
154 ~~of which are to be included in all bills of lading issued hereunder:~~
155 ~~U.S.A. Clause Paramount~~

HANSE Bereederung GmbH & Co. OHG                    SECOND ORIGINAL

156 This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April
157 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of
158 any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading
159 be repugnant to said Act to any extent, such term shall be void to that extent, but no further.
160                                         Both-to-Blame Collision Clause
161 If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the
162 Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried
163 hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss
164 or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-
165 carrying ship or her owners to the owners of said goods and set-off, recouped or recovered by the other or non-carrying ship or her
166 owners as part of their claim against the carrying ship or carrier.
167     25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be with-
168 drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the
169 port or to get out after having completed loading or discharging. *See Clause 60 - BIMCO Linertime Ice Clause*
170     26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171 navigation of the vessel, *physical control and operation of the vessel and at all times acts of pilots and tug boats,* insurance, crew, and all other matters,
    same as when trading for their own account.
172     27. A commission of *1.25* 2½ per cent is payable by the Vessel and Owners to *Reklub Shipping Limited*............................
173 ..............*plus 1.25% to HANSE Bereederung GmbH & Co. OHG, Hamburg*....plus 1.25% to RDA Shipping
174 on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.                    GmbH
175     28. An address commission of 2½ per cent payable to..........................................on the hire earned and paid under this Charter.

*Additional Clauses Number 29 to 109 inclusive and General Average and New Jason Clause, General Clause Paramount and New Both to Blame
Collision Clause, as attached hereto, are deemed to be fully incorporated in this Charter Party.*

Charterers: ..................................................    Owners: ..................................................
                                                                           as per authority

visible, in the event of any modification made to the preprinted text of this document, and which is not clearly visible, then the original NYPE approved document shall apply. The brokers assume no responsibility for any loss or damage caused as a result of discrepancies between the original NYPE approved document and this document.

# EXHIBIT 2

|  | M/V "TAMPA BAY" | NSC |
|---|---|---|
|  | S.Y.M.S. - C/P dd. June 1st, 2005 |  |
|  | HIRE STATEMENT |  |
| H/S-No.: | 25 |  |
| Hire | $14.950,00   pdpr inclot 15 ds in advance |  |
| Bank account | Hypo Vereinsbank München<br>Swift Code: HYVEDEMM300<br>Account No: 877927334<br>IBAN: DE28700202700877927334<br><br>reference: M/V "TAMPA BAY"<br><br>in favour of: FFH Fonds Nr. 29 |  |

| Hire<br>30.06.2008 23:59<br>31.07.2008 23:59<br><br>                     31,00 days | $463.450,00 |  |
|---|---|---|
| Charterers' expenses<br>Lashing material<br>Owners' expenses | $826,67 |  |
|  | $463.450,00 | $0,00 |
| Balance in Owners' favour    (E. & O. E.) |  | $463.450,00 |

| | | |
|---|---|---|
| M/V "TAMPA BAY" S.Y.M.S. - C/P dd. June 1st, 2005 HIRE STATEMENT | | NSC |
| H/S-No.: | 26 | |
| Hire | $14.950,00   pdpr inclot 15 ds in advance | |
| Bank account | Hypo Vereinsbank München Swift Code: HYVEDEMM300 Account No: 877927334 IBAN: DE28700202700877927334 reference: M/V "TAMPA BAY" In favour of: FFH Fonds Nr. 29 | |

| | | |
|---|---|---|
| Hire 31.07.2008 23:59 15.08.2008 23:59           15,00 days | $224.250,00 | |
| Charterers' expenses | | |
| Owners' expenses | | |
| | $224.250,00 | $0,00 |
| Balance in Owners' favour    (E . & O. E.) | | $224.250,00 |

| M/V "TAMPA BAY" | |
|---|---|
| S.Y.M.S. - C/P dd. June 1st, 2005 | NSC |
| HIRE STATEMENT | |
| H/S-No.: | 27 |
| Hire | $14.950,00   pdpr inclot 15 ds in advance |
| Bank account | Hypo Vereinsbank München<br>Swift Code: HYVEDEMM300<br>Account No: 877927334<br>IBAN: DE28700202700877927334<br><br>reference: M/V "TAMPA BAY"<br><br>in favour of: FFH Fonds Nr. 29 |

| Hire<br>15.08.2008 23:59<br>30.08.2008 23:59<br><br>                  15,00 days | $224.250,00 | |
|---|---|---|
| Charterers' expenses | | |
| Owners' expenses | | |
| | $224.250,00 | $0,00 |
| Balance in Owners' favour    (E . & O. E.) | | $224.250,00 |